Mr. Chief Justice Sharkev
delivered the opinion of the court.
This action was brought on a bill of exchange, against the drawer and indorser, who are citizens of this state. The bill *327 was drawn on Stephen Franklin, New Orleans, but it does not appear where it was drawn. After verdict for defendants, the plaintiffs moved for a new trial.
It seems that the bill was presented for payment at maturity, that payment was refused, the bill protested, and notices properly addressed were put. in the post-office in due time for the first mail.
But the demand was made by a deputy notary, although the protest was made out and the notices mailed by the principal. It is conceded, that notaries may appoint deputies to assist them in making protests and delivering notices of protests of bills of exchange, but it is denied that such deputy can make a demand of payment, — and this is the point. The objection is predicated on the act of the legislature of Louisiana, which is in the following language : — “ That it shall be lawful for each and every notary public in the city of New Orleans to appoint one or more deputies to assist him in the making of protests, and delivery of notices of protest of bills of exchange and promissory notes.” This statute, it is said, enumerates the powers of the deputy, and thereby excludes from him other than the enumerated powers. We do not think, however, that the lan-' guage employed can be regarded as limiting the authority of the deputies to a particular portion of the duties of a notary. As a general principle, when an officer can act by deputy, the deputy may do whatever the principal could do in the regular discharge of the official duty. In legislating with this general principle in view, it would seem to require express terms of limitation to restrict the deputy. If the act had stopped after giving the notaries power to appoint deputies, no one would question the power of the deputy to do every thing which the principal could do, and when the legislature proceeded to say, “ to assist him in the making of protests and delivery of notices of protests,” it was certainly not intended to limit his power to those acts alone. But the power to make a protest embraces every thing. It cannot be made without a demand of payment and refusal, and the power to make a protest necessarily implies every other power or duty which precedes or is requisite to the consumma- *328 lion of a protest. The grant of a power to do the thing embraces necessarily the means which the law requires to be employed in doing it. It would be nugatory and idle to authorize an officer to make a protest, and deny him the power to make a demand, which is a constituent part of a protest, and should be recited in it. We do not arrive, at this conclusion by construing the act according to an unexpressed legislative intention, but from what has been expresse/I. The power to make a protest embraces the power to take the necessary steps to accomplish it. The word protest, signifies a complaint that the drawee would not pay the bill on demand, and no one can make it who has not power to demand payment. The demand was therefore properly made by the deputy. With much more propriety might we question the sufficiency of the protest in this instance, because it was made out by the notary on a demand made by his deputy, but no objection is taken on that ground, and we of course need not raise the objection. We are construing the laws of a sister state, in their application to the acts of an officer of that state, and should rather indulge a presumption in-favor of the regularity of those acts than against them, until we are satisfied of their invalidity by state interpretations of the law.
Judgment reversed, and new trial granted.